| | |
|---|---|
| 1 | JEFFREY R. SIMMONS (SBN 011096) |
| | JOHN A. HINK (SBN 012189) |
| 2 | RYLEY, CARLOCK & APPLEWHITE |
| | A PROFESSIONAL ASSOCIATION |
| 3 | One North Central Avenue |
| | Suite 1200 |
| 4 | Phoenix, AZ 85004-4417 |
| | Phone: (602) 258-7701 |
| 5 | Fax: (602) 257-9582 |
| | jsimmons@rcalaw.com |
| 6 | |
| | DALE M. CENDALI (applying for admission *pro hac vice*) |
| 7 | DIANA M. TORRES (applying for admission *pro hac vice*) |
| | O'MELVENY & MYERS LLP |
| 8 | 400 South Hope Street |
| | Los Angeles, CA  90071-2899 |
| 9 | Telephone:   (213) 430-6000 |
| | Facsimile:   (213) 430-6407 |
| 10 | dtorres@omm.com |

Attorneys for Plaintiffs
The United States Olympic Committee and
the International Olympic Committee

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| The United States Olympic Committee and the International Olympic Committee, | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| Does 1-10, inclusive, | |
| Defendants. | |

Plaintiffs, the United States Olympic Committee ("USOC") and the International Olympic Committee ("IOC"), by their attorneys complain and allege as follows:

1001004.1
7/22/08

# NATURE OF THE ACTION

1. This is an action concerning Defendants' use of Plaintiffs' valuable intellectual property on seven websites to advertise the sale of tickets to the 2008 Summer Olympic Games in Beijing, China. On information and belief, the tickets Defendants offer for sale do not exist, will not be delivered, or, in the case of the Opening and Closing Ceremony tickets, cannot be used even if they do exist and are delivered. These claims arise under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 *et seq.*; the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and the statutory law of the State of Arizona, where plaintiffs are suffering injury and defendants are committing wrongful acts as hereinafter averred.

# THE PARTIES

2. Plaintiff USOC is a non-profit, federally-chartered corporation with its principal place of business at One Olympic Plaza, Colorado Springs, Colorado 80909-5780. It is the coordinating body for the Olympic Movement in the United States and is recognized by the IOC as the National Olympic Committee for the United States. It trains and underwrites expenses for United States athletes at the Olympic and Paralympic Games, as well as determines which United States city may present a bid to host the Olympic and Paralympic Games. The mission of the USOC is to support United States Olympic and Paralympic athletes in achieving sustained competitive excellence and preserve the Olympic ideals, and thereby inspire all Americans. In 1950, the USOC was granted a federal charter, now codified as the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 *et seq.* ("OASA").

3. Plaintiff IOC is an international, non-governmental, non-profit organization organized and existing under the laws of Switzerland with its principal place of business at Chateau de Vidy, Lausanne, 1007 Switzerland. The IOC was founded on June 23, 1894 by Baron Pierre de Coubertin as the umbrella

organization of the Olympic Movement. In 1896, the first Olympic Games of the modern era were hosted in Athens, Greece under the IOC's direction. Since then, the IOC has continued to supervise the organization of the Olympic Games, including 25 Olympic Summer Games and 20 Olympic Winter Games.

4. The true names and capacities of the Defendants named herein as Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants is liable to Plaintiffs for the wrongful conduct alleged herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Title 28 U.S.C. Sections 1331, 1338(a) and (b), and 1367(a).

6. This Court has personal jurisdiction over the Defendants pursuant to Arizona's long-arm statute, Ariz. R. Civ. P. Rule 4(e)(2), because they have sufficient "minimum contacts" with the state of Arizona such that the exercise of personal jurisdiction would comport with the requirements of due process. Defendants have committed tortious acts within this judicial district, including by defrauding a consumer in Phoenix, Arizona, as alleged below. Defendants also have business contacts with companies located in Arizona, including (1) Domains By Proxy, which registered the domain names for Defendants' websites on their behalf, and (2) GoDaddy.com, the registrar with whom Domains By Proxy registered the domain names on Defendants' behalf. Thus, Defendants have purposefully availed themselves of the privileges of conducting their business

activities in the state of Arizona such that Defendants should reasonably anticipate being haled into court here.

7. Venue is proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district. As discussed below, a private investigator employed by Plaintiffs visited Defendants' websites from Phoenix, Arizona, and purchased tickets to the Opening Ceremony of the Beijing Games. The investigator requested expedited delivery of the tickets using a credit card with a billing address in Phoenix, but the purchased tickets were never delivered. Venue is also proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2) because, on information and belief, a substantial part of the property that is the subject of this action is situated in this district, given that both the registrar and the registrant of Defendants' domain names are located in Arizona.

## THE PLAINTIFFS' VALUABLE RIGHTS

**Background**

8. The first modern Olympic Games were held in Athens in 1896. The Games have continued since that time. The 2008 Beijing Olympic Summer Games will begin with Opening Ceremonies on August 8, 2008, will feature numerous athletic events over a period of sixteen days, and will conclude with Closing Ceremonies on August 24, 2008.

9. The goal of the modern Olympic Movement is to contribute to building a peaceful and better world by educating youth through sport practiced without discrimination of any kind, in a spirit of friendship, solidarity and fair play. The Olympic Movement encompasses organizations, athletes, and other persons who agree to be guided by the Olympic Charter. These include the IOC (the Olympic Movement's umbrella organization), the international sports federations (non-governmental organizations responsible for the international administration of one or more sports), the USOC and other National Olympic Committees

(organizations that lead the Olympic Movement within each country), the Organizing Committees of the Olympic Games, local clubs, and persons belonging to them, particularly the athletes.

10. As part of their efforts to further the Olympic Movement, Plaintiffs and the other National Olympic Committees spend significant resources on efforts to promote the upcoming Olympic Games, directly and via their marketing partners. The USOC and its sponsors have spent nearly $900 million in television advertising during NBC's broadcasts of the last two Olympic Games, and will spend $437 million during the 2008 Olympic Games this summer. The USOC itself will spend more than $1.5 million in promoting the U.S. Olympic Team prior to and during the 2008 Olympic Games.

**The Olympic Marks**

11. Since 1896, Plaintiffs have used certain trademarks in connection with the Olympic Games, including the word OLYMPIC and the well-known Olympic Rings symbol, which is the most recognized sports emblem in the United States. USOC research shows that more than 86% of the U.S. population can identify the Olympic Rings as the symbol for the Olympic Games. In addition, Plaintiffs also use specific marks in connection with each Olympic Games. Those marks include City & Year Marks, such as SYDNEY 2000, ATHENS 2004, TORINO 2006, and BEIJING 2008, and various symbols, logos, taglines, and other marks.

12. In the United States, the intellectual property rights to the words and symbols associated with the Olympic Games are statutorily protected by the OASA. *See* 36 U.S.C. §220506(a). The OASA grants to the USOC the "exclusive right to use" various marks associated with the Olympic Games. It further authorizes the USOC to pursue a civil action against any person who uses the protected marks, *inter alia,* "for the purpose of trade" or "to induce the sale of any goods or services." 36 U.S.C. §220506(c).

13. The marks protected by the OASA include the word OLYMPIC, as well as "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the [USOC]." 36 U.S.C. §220506(a)(4), (c)(3) and (c)(4).

14. In addition to the USOC's rights under the OASA, Plaintiffs also own statutory and common-law trademark rights to the words, symbols, and other marks they have diligently sought to protect.

15. The USOC owns U.S. Trademark Registration Nos. 968,566, 2,311,493, and 2,777,890 for the word mark OLYMPIC. The USOC and the IOC also own dozens of U.S. trademark registrations that incorporate the Olympic Rings symbol.

16. The IOC registered the word mark BEIJING 2008, as reflected in the U.S. Trademark Registration Nos. 2,739,492 and 2,764,102, and has assigned ownership rights over those registrations to the USOC.

17. The IOC also registered, and assigned to the USOC, U.S. Trademark Registration No. 3,043,229 for the official emblem of the Beijing 2008 Olympic Games ("Beijing 2008 Olympic Emblem"), as depicted below:



18. The above marks ("Olympic Marks") are extremely valuable assets to Plaintiffs because of the goodwill they represent and because Plaintiffs' revenues are derived principally from licensing their intellectual property through marketing, licensing and sponsorship agreements, passing the use of the

COMPLAINT

Olympic Marks and from the sale of television rights for broadcasting the Olympic Games. The IOC also receives a portion of the revenue derived from the sale of each ticket to the Beijing Games.

19. The USOC receives only very limited, specific funding from the United States' government. The IOC receives no funding from any government, and much of the revenues that it collects are redistributed to National Olympic Committees and international sports federations to train and support their athletes and promote the Olympic Movement. Thus, the protection of the Olympic Marks is essential to Plaintiffs' continued ability to help promote and coordinate the Olympic Games and thereby further the Olympic Movement.

**Authorized Tickets to the Beijing 2008 Olympic Games**

20. The Beijing Organizing Committee for the Olympic Games ("BOCOG") allots to National Olympic Committees a certain number of tickets to events in the Olympic Games, carefully considering each country's population, proximity to the Games, the number of athletes in each sport, past experience, and numerous other factors. The USOC and the other National Olympic Committees are responsible for coordinating the sales of tickets in each country, subject to the approval of the IOC and BOCOG.

21. Tickets to the 2008 Olympic Games in Beijing were first offered for sale in April 2007. Prices for tickets are intentionally kept low so as to allow as many people as possible to experience the Olympic Games ceremonies and competitions, while still generating revenue sufficient to support the staging of the Games. Thus, the average price for tickets to sports events in the Beijing Games is just $11.

22. The USOC has an exclusive sponsorship agreement with Global Sports Consultants, L.L.C. d/b/a Jet Set Sports or CoSport that governs the sales of all authorized tickets to the 2008 Beijing Olympic Games in the United States. Jet Set Sports and CoSport are the only official providers with the right to distribute

and sell Olympic tickets and hospitality packages in the United States, and to use Olympic trademarks in the United States to promote and sell such hospitality and travel packages for the 2008 Beijing Olympic Games.

23. All tickets to the Olympic Games are intended to be nontransferable by the purchasing customer. The terms and conditions printed on the back of each ticket states, "You cannot resell or trade your Ticket."

24. For security reasons, tickets to the Opening and Closing Ceremonies have been specially designed to prohibit, to the greatest extent possible, counterfeiting and speculative ticket reselling. Specifically, each ticket to the Opening and Closing Ceremonies for the upcoming Games is embedded with a microchip containing the ticket's serial number, which can then be read by a database maintained by BOCOG to retrieve the bearer's photograph, passport details, addresses, e-mail addresses, and telephone numbers. Tickets to the Opening and Closing Ceremonies may be transferred once, but only if both the original purchaser and the transferee fill out and submit a form requiring specific identifying information to BOCOG by June 30th, 2008.

## **THE DEFENDANTS' UNLAWFUL CONDUCT**

**Defendants' Websites Use the Olympic Marks**

25. Defendants, on information and belief, operate two websites (the "Websites") offering for sale what they claim to be tickets to the 2008 Beijing Olympic Games. One of the Websites, which is located at http://www.beijing-2008tickets.com/ (the "Primary Website"), is the medium through which users may purchase the tickets, as explained below. The other website operated by Defendants (the "Secondary Website"), located at http://www.official-ticket.com, offers the same tickets for sale, but contains hyperlinks connecting the user to the Primary Website at the point of purchase.

26. The Olympic Marks are used on the Primary Website and in its domain name without Plaintiffs' consent. The Primary Website prominently

displays a replica of the Beijing 2008 Olympic Emblem.  It also prominently displays the word mark BEIJING 2008 written in large letters in the same distinctive typeface used in that emblem.  All of these marks are featured prominently across the top of the home page and subpages of the Primary Website in the arrangement depicted below:



The word mark BEIJING 2008 written in Plaintiffs' distinctive typeface, as well as variations of the Beijing 2008 Olympic Emblem, are again displayed in two other places on the home page.

27. The Primary Website also repeatedly use the word marks OLYMPIC and BEIJING 2008 without Plaintiffs' authorization.

28. The home page of the Secondary Website, which offers for sale tickets to a variety of sports events and music concerts, has a link that says "Olympic Beijing 2008," which redirects the user to the Primary Website where the user can theoretically purchase tickets to the Olympic Games.

29. The sole purpose of the Primary Website is to sell tickets to the Olympic Games.  The Primary Website offers no other good or service.  Thus, every instance of both Websites' use of the Olympic Marks appears in the context of an offer to sell tickets.

**Defendants Are Offering To Sell Tickets They Cannot Legitimately Transfer And Likely Do Not Possess**

30. The home page of Primary Website contains links to subpages for 40 categories of Olympic events, including the Opening and Closing Ceremonies and 38 categories of individual athletic competitions.  Each subpage offers a variety of tickets within each category, including tickets to each day of the

competition and frequently including several pricing options depending on where the seats are located at the event. The tickets offered for sale on the Websites range in price, from as low as €67 for early individual competitions, to as high as €6990 per ticket for "VIP Platinum" tickets to the Opening Ceremony.

31. Plaintiffs are informed and believe, and based thereon allege, that tickets offered for sale on the Websites, and purchased from the Primary Website, are largely, if not entirely, nonexistent.

32. On information and belief, consumers have complained about tickets sold on the Secondary Website.

33. A private investigator employed by Plaintiffs visited the Primary Website from Phoenix, Arizona. He purchased a ticket to the Opening Ceremony, spending a total of €2027. His credit card has been charged for the tickets he ostensibly purchased, but he has not received them.

34. Another private investigator employed by Plaintiffs also visited the Primary Website and ordered one ticket to the Opening Ceremony and one ticket to a basketball event, totalling €2154. His attempts to request expedited delivery have been unsuccessful. He has also called all six of the telephone numbers provided on the Websites, but all of them either were not in service or led only to a voicemail message. No one has returned his calls.

35. Neither investigator was asked for their photograph or passport details, as required by BOCOG's policy for admission, even with a valid ticket, to the Opening Ceremony, and neither provided such information. Accordingly, these investigators cannot receive from Defendants tickets that will gain them admission to the Opening Ceremony under BOCOG's policy.

36. Defendants misleading state, prominently on the home page of the Primary Website, "Book your *official* tickets online trough [sic] our secure system. All tickets booked are confirmed and guaranteed." (emphasis added.)

**Plaintiffs Will Suffer Irreparable Harm From Defendants' Continuing Conduct**

37. Plaintiffs are filing this action to stop Defendants' misappropriation of their valuable intellectual property to deceive innocent customers. Not only will such customers be harmed by Defendants' conduct, but Plaintiffs will also be harmed in numerous ways.

38. First, Defendants' conduct threatens the Olympic brand that Plaintiffs have worked so hard to build and protect. If the Olympic Marks are permitted to be used in connection with fraudulent criminal activity, they will be tarnished in the public eye. Individual customers who purchase tickets from Defendants and do not receive them will likely be soured on their experience attempting to go to the Olympic Games, and may not attend future Games or purchase licensed merchandise, when, instead, they could have purchased from authorized channels. Indeed, customers who are defrauded by a site that uses the Olympic Marks will likely be wary in the future of trusting even authorized sites and vendors using the Olympic Marks, because they will have no assurance that the use of the Olympic Marks does, in fact, denote an authorized agent of the USOC. Given Plaintiffs' dependence on the value of their intellectual property to fund its mission, it is imperative that the Olympic brand be protected from the Defendants' efforts to undermine that brand for their own economic gain to the detriment of the Olympic Movement.

39. Defendants also injure Plaintiffs' relationships with their sponsors. The USOC's exclusive partner for ticket sales, Jet Set Sports, suffers directly by having to compete with unauthorized ticket sellers. Both the USOC and the IOC have numerous other sponsors in the United States who have paid substantial sums to be associated with the Olympic brand, the value of which is being threatened by Defendants' activity. Defendants' conduct, if allowed to continue, will likely adversely affect Plaintiffs' ability to attract such sponsors and

sponsorship revenues in the future.

40. Finally, the unauthorized sales of tickets (whether nonexistent or not) will affect authorized ticket sales by Jet Set Sports. Even as of this late date, there are tickets available for purchase in the United States as part of hospitality packages. Consumers who purchase (or believe they have purchased) tickets from Defendants are less likely to purchase such packages, and the USOC, which receives certain revenue from Jet Set Sports based on ticket sales, suffers directly as a result of Defendants' conduct.

**Defendants' Efforts to Conceal Their Identities**

41. Defendants are concealing from the public their true identities and contact information, in an apparent effort to remain anonymous and evade prosecution for their illicit conduct.

42. Neither of the Websites lists any individual or corporate entity as being the operator of the Websites, nor do they give any addresses. The Websites list phone numbers in six European countries, and states that they have offices in Victoria, Seychelles. None of those phone numbers leads to an operating telephone line, however.

43. In addition, Defendants have employed the services of an Arizona company, Domains By Proxy, an entity that, on information and belief, registers domain names on behalf of website owners seeking to remain anonymous. Thus, Domains By Proxy is the listed registrant on publicly-available records of Defendants' domain name registrations. Domains By Proxy registered those domain names with the registrar GoDaddy.com, another Arizona company.

44. Despite Defendants' efforts to conceal their identities, sufficient information is available to confirm that they have deceived, and will continue to deceive, consumers in Arizona and throughout the United States. Both of the Websites are registered with domain names ending in .com, a top-level domain commonly used in the United States. And, as explained above, they have multiple

contacts with corporations within the state of Arizona, and have completed confirmed sales of supposedly official tickets they cannot deliver to a consumer in the state of Arizona.

## FIRST CLAIM FOR RELIEF

### Unauthorized Use of the Olympic Marks
### In Violation of 36 U.S.C. § 220506(a) and (c)

45. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 44.

46. Defendants use the Olympic Marks including by using the word OLYMPIC, the Olympic Rings logo, and other marks that falsely represent association with or authorization by Plaintiffs on the Websites and by using the word mark BEIJING 2008 in the Primary Website's domain name.

47. Plaintiffs have not consented to Defendants' use of the Olympic Marks.

48. Defendants use the Olympic Marks for the purpose of trade and to induce the sale of goods.

49. Plaintiffs are entitled, pursuant to §220506(c) of the OASA, for all of the remedies available under the Lanham Act, which include treble damages, costs, and attorneys' fees.

50. Plaintiffs have no adequate remedy at law. The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

# SECOND CLAIM FOR RELIEF

### Infringement of Registered Trademarks
### In Violation of Section 32(1) of the Lanham Act,
### 37 U.S.C. §1114(1)

51. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 50.

52. Plaintiffs' federal trademark registrations for the Beijing 2008 Olympic Emblem and the word marks OLYMPIC and BEIJING 2008 are in full force and effect.

53. The display of logos, symbols, words, and other marks on the Websites and in the Primary Website's domain name, as alleged herein, constitutes the use in interstate commerce, without Plaintiffs' consent, of reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' registered marks in connection with the sale, offering for sale, distribution, and advertising of goods.

54. Such use is likely to cause confusion, to cause mistake, or to deceive consumers regarding the source of Defendants' goods, as they are likely to lead the public to conclude incorrectly that Defendants' tickets originated with, or are sponsored or authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

55. Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, to cause mistake, and to deceive.

56. Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

57. Plaintiffs have no adequate remedy at law. The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief,

and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

# THIRD CLAIM FOR RELIEF

**False Endorsement or Association and False Designation of Origin
In Violation of Section 43(a) of the Lanham Act,
37 U.S.C. §1125(a)**

58. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 57.

59. By using them on the Websites and in the Primary Website's domain name, as alleged herein, Defendants use in commerce logos, symbols, words, and other marks that falsely designate the origin of its goods and use false or misleading descriptions of facts and false or misleading representations of facts, which are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods and commercial activities by Plaintiffs.

60. Defendants' activities are likely to lead the public to conclude incorrectly that Defendants are endorsed by or associated with Plaintiffs, or that Defendants' tickets originated with, or are sponsored or authorized by, Plaintiffs, to the damage and harm of Plaintiffs and the public.

61. Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, to cause mistake, and to deceive.

62. Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

63. Plaintiffs have no adequate remedy at law. The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief,

and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

## FOURTH CLAIM FOR RELIEF

**False Advertising
In Violation of Section 43(a) of the Lanham Act,
37 U.S.C. §1125(a)**

64. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 63.

65. The Websites use in commerce logos, symbols, words, and other marks that falsely designate the origin of Defendants' goods and use false or misleading descriptions of facts and false or misleading representations of facts, which, in commercial advertising or promotion, misrepresent the nature, characteristics, and qualities of Defendants' goods.

66. In addition to using the above marks, the Primary Website misleadingly states that it provides "official" tickets to the Olympic Games.

67. Defendants' conduct has harmed Plaintiffs' ability to conduct its business, including by damaging the Olympic brand that Plaintiffs have worked so hard to build and protect, as well as injuring Plaintiffs' relationships with their sponsors.

68. Defendants have acted willfully, with the intent to deceive the public regarding the nature, characteristics, and qualities of the tickets they offer for sale.

69. Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

70. Plaintiffs have no adequate remedy at law. The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief,

and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

## FIFTH CLAIM FOR RELIEF

**Cybersquatting
In Violation of Section 43(d) of the Lanham Act,
37 U.S.C. §1125(d)**

71. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 70.

72. Defendants have registered and used a domain name that incorporate words and phrases that are both (1) protected by reason of 36 U.S.C. § 220506 and (2) confusingly similar to and dilutive of Plaintiffs' registered trademark BEIJING 2008.

73. Defendants have a bad faith intent to profit from their use of the Olympic Marks, which they have used primarily with the intent to divert consumers from legitimate online locations for sales of authorized Olympic tickets to their own site accessible under the Defendants' domain name that could harm the business and goodwill represented by the marks for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendants' websites.

74. Defendants have refused to provide their contact information when applying for the registration of the domain name, have intentionally failed to maintain accurate contact information, and have demonstrated a pattern of such conduct.

75. Defendants have extensively incorporated Plaintiffs' BEIJING 2008 mark into their domain name.

76. Defendants are entitled to an order that Defendants' domain name be forfeited, cancelled, or transferred to Plaintiffs pursuant to 37 U.S.C. §1125(d)(1)(C).

## SIXTH CLAIM FOR RELIEF

**Fraudulent and Deceptive Practices
In Violation of the Consumer Fraud Act,
A.R.S. § 44-1522**

77. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 76.

78. Defendants use false, deceptive and misleading statements and material omissions in connection with the sale and advertisement of tickets to the 2008 Beijing Olympic Games.

79. Defendants intended that consumers would rely upon such misrepresentations and material omissions of material facts and consumers did in fact rely of Defendants' misrepresentations and omissions.

80. Defendants' false representations resulted in injury to the Plaintiffs.

81. Plaintiffs have no adequate remedy at law. The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

82. That Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participating with any of them be immediately and permanently enjoined, pursuant to 15 U.S.C. § 1116(a), from:

   a. displaying the Olympic Marks, or any terms, logos or images that are confusingly similar thereto, on the Websites or any other website;

   b. directly or indirectly infringing the Olympic Marks in any manner including, but not limited to, advertising, selling, and/or offering for

sale any tickets or any other goods or services, that infringe said trademarks;

  c. engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead, or deceive members of the public into believing, that the actions of Defendants, the tickets sold by Defendants, or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

  d. affixing, applying, annexing, or using in connection with tickets or any other goods or services, a false description or representation, including words or other symbols, tending falsely to describe or represent such goods or services as being those of Plaintiffs;

  e. otherwise competing unfairly with Plaintiffs in any manner;

  f. registering and maintaining any domain name which bears, incorporates or utilizes on any level the Olympic Marks or any terms which are confusingly similar thereto;

  g. effecting assignments or transfers, forming new entities or associations or utilizing any other means or device for the purpose of circumventing or otherwise avoiding prohibitions set forth in subparagraphs (a) through (f);

83. That Defendants' domain names be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651 or, in the alternative, that Defendants be required to forfeit, cancel, or transfer to Plaintiffs any domain name which incorporates any of the Olympic Marks pursuant to 37 U.S.C. §1125(d)(1)(C).

84. That Defendants account for and pay over to Plaintiffs all damages sustained by Plaintiffs from lost sales of genuine Olympic tickets and other Olympic-related merchandise, and profits realized by Defendants by reason of

Defendants' unlawful acts herein alleged, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

85. That Defendants account for and pay over to Plaintiffs, in accordance with Arizona law, all damages sustained by Plaintiffs and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and prejudgment interest and that those profits be increased as provided by law;

86. That Plaintiff recover from Defendants its reasonable attorneys' fees and costs of suit under 15 U.S.C. § 1117;

87. That Defendants, within ten days after the service of the judgment herein, be required to file with this Court and serve upon Plaintiffs' attorneys, a written report under oath setting forth in detail the manner in which they have complied with the judgment; and

88. That Plaintiffs have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 22, 2008

RYLEY, CARLOCK & APPLEWHITE

By: /s/ Jeffrey R. Simmons
Jeffrey R. Simmons
John A. Hink
Attorneys for Plaintiffs
The United States Olympic Committee and the International Olympic Committee